CASE 85.—ACTION BY MAUDE WALTERS AGAINST THE WOODMEN OF THE WORLD ON AN INSURANCE CERTIFICATE ON THE LIFE OF HER HUSBAND.— February 21.

# Woodmen of the World v. Walters

Appeal from Fulton Circuit Court.

R. J. BUGG, Circuit Judge.

Judgment for plaintiff.   Defendant appeals.   Affirmed.

1. Insurance—Life Policy—Conditions—Violation of Law—Self-Defense.—Where insured shot and killed Spinks in self-defense, and was also shot and killed by Spinks, insured did not die in consequense of a violation or attempted violation of the laws of the State or of the United States, within a benefit certificate precluding a recovery under such circumstances.

2. Appeal—Review—Verdict—Evidence.—The Court of Appeals will not interfere with the verdict of a properly instructed jury, unless it is flagrantly against the evidence.

HERSHEL T. SMITH and BROME & BURNETT for appellant.

LEE & HESTER for appellee.

OPINION OF THE COURT BY JOHN D. CARROLL, COMMI:SIONER—Affirming.

Joel Q. Walters, the husband of appellee, was a member of appellant, the Woodmen of the World, a life insurance company, and under the terms of his membership was entitled at the time of his death to $750. In the certificate issued to him, it was provided that: "If the member holding this certificate shall be convicted of a felony, or shall be expelled from the order, or becomes so far intemperate, or use opiates, cocaine, chloral, or other narcotic poisons to such an extent as to impair his health,, or to produce delirium tremens, or should die in consequence of a duel or in consequence of the violation or attempted violation of the laws of the State, or of the United States, this certificate shall be null and void and of no effect, and all moneys which shall have been paid, and all rights and benefits which have accrued on account of this certificate shall be absolutely forfeited without notice or service." In an action by appellee, the beneficiary in the certificate of membership issued to Walters by appellant, it interposed as a defense the plea that Walters died "in consequence of a duel, or in consequence of the violation, or attempted violation, of the laws of the State," and on these grounds sought to avoid the payment of the amount due on the certificate. A trial was had before a jury. resulting in a verdict and judgment in favor of appellee for the full amount claimed, to reverse which this appeal is prosecuted.

The death of Walters occurred as the result of a quarrel, in which he engaged with his brother-in-law, J. W. Spinks, who was killed by Walters. This awful tragedy took place in the house in which Walters and

Spinks and their families were living at the time, and the only eyewitnesses competent to testify were their wives and a colored servant girl. The evidence as to who commenced the difficulty and fired the first shot is somewhat conflicting. The substance of the facts detailed by the witnesses are as follows: Walters had been absent from home for a few days, and, upon his return, went into the room occupied by Spinks and his family, where his wife was. The wife of Spinks was sick in bed at the time, and his little baby was in the room in a dying condition. Walters only remained for a few moments, making some inquiry about the condition of the baby and the wife of Spinks, and then he and his wife went into the dining room. In a short while Walters and his wife came back to Spinks' room; Walters carrying his baby in his arms. A few words—not of serious import—passed between Spinks and Walters, and immediately the shooting commenced, and in a few moments both of the men were lying dead in the hall adjacent to the room. On the evening of the tragedy, and shortly before it occurred, Spinks took his pistol out of the drawer in which it was kept, went out of the room, and snapped it several times. The evidence leaves the impression that Spinks was the aggressor, and started towards Walters, firing the first shot before Walters returned the fire. If Walters was the aggressor, or commenced the difficulty, his death would have been due to a violation of the laws of the State, and conseequently appellant would not be liable on the certificate issued to him; and so, if Walters' death was the result of a duel or mutual combat engaged in between himself and Spinks. On the contrary, if Spinks was the aggressor, and first attacked Walters, Walters had the right to defend and protect himself from the assault, using such means as were necessary, or reasonably

appeared to him to have been necessary, for that·purpose, and his conduct would not be a violation of the conditions in the certificate. There is not sufficient evidence to support the theory that Walters' death was the result of a duel, or a voluntary combat engaged in between him and Spinks. The real, in fact only question in the case is: Was Walters, at the time he was killed, acting in his self-defense, or was he the aggressor or in fault in the difficulty that ended in his death?

This being the issue in the case, the trial judge instructed the jury as follows:

"The court instructs the jury to find for plaintiff the sum of $750, unless you believe from the evidence that the death of Joel Q. Walters was the result of a duel entered into between himself and J. W. Spinks, and that said Walters voluntarily entered into and engaged in said duel with said Spinks, or unless you believe from the evidence that the proximate cause of the death of said Walters was in consequence of the violation, or attempted violation, of the laws of this commonwealth, in taking or attempting to take the life of J. W. Spinks, or of inflicting great bodily harm upon him, or of provoking said Spinks to attack him by hostile words or demonstrations. Then, and in any of such events, the law is for the defendant, and you could so find."

"The court instructs the jury that if, at the time Walters and Spinks engaged in the combat which resulted in shooting each other, the decedent, Walters, was in danger of losing his life or of suffering great bodily harm at the hands of Spinks, or he had reasonable grounds for believing, and did in good faith believe, that his life was in danger, or in danger of suffering great bodily harm at the hands of Spinks, and that said Walters used no more force than was

necessary, or seemed to him to be necessary, in the use of a reasonable discretion, to rid himself of the danger to him, which was real, or to him appeared to be real, 'or reasonably apparent, then the law is for the plaintiff, and you will so find, although you may believe that the death of Joel Q. Walters was the result of his attempt to kill Spinks, unless you should further find from the evidence that the decedent, Walters, began the difficulty which led up to the shooting, and was the active, proximate cause of the attack upon himself by Spinks, in which latter event the law is for the defendant, and you should so find, although you may believe that at the time Walters shot Spinks he acted in self-defense, as laid down in the first part of this instruction.''

These instructions in some of the language used are inaccurate; but, upon the whole, they presented fairly to the jury the issue between the parties. The rule is too well established to need citation of authority that this court will not interfere with the verdict of a properly instructed jury, unless it is flagrantly against the evidence and it cannot be said that the verdict returned is unsupported by evidence. It is true that the testimony is meager and unsatisfactory; but the weight of it tends to support the theory that Spinks, and not Walters, was the aggressor, and that, although Walters killed Spinks, he believed that Spinks was then about to take his life, or inflict upon him great bodily harm.

It is not a violation or attempted violation of the laws of the State for a man in defense of his own life to take the life of another, and the person who thus slays his adversary will be excused, if he believed, or had reasonable grounds to believe, that the danger to himself was real, or in the exercise of a reasonable judgment appeared to him to

have been real, whether it was or not. It is not true, as a matter of law, that it is a violation of the laws of this commonwealth to take the life, or attempt to take the life, of any human being, as cases unfortunately arise in which it becomes necessary to take human life in defense of one's own person. The provision in the certificate is a reasonable and proper one, and it should be fairly interpreted, as it accomplishes the double purpose of protecting the company and exercising a restraining influence upon the members, who know that if they engage in violations of the law they will forfeit their rights to insurance under the policy or certificate.

Under the facts of this case as exhibited by the record, and in the face of the verdict returned by the jury, we do not feel warranted in holding that either a peremptory instruction should have been given on behalf of appellant, or that there is in the record any error prejudicial to its substantial rights.

Wherefore the judgment of the lower court is affirmed.